IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| ANGRY CRAB CORPORATION<br>d/b/a THE ANGRY CRAB | )<br>)<br>) | Case No: |
| Plaintiff | )<br>)<br>) | |
| v. | )<br>) | **JURY TRIAL DEMANDED** |
| SOCIETY INSURANCE, INC. | )<br>)<br>) | |
| Defendant. | ) | |

## COMPLAINT AND REQUEST FOR DECLARATORY RELIEF

Plaintiff ANGRY CRAB CORPORATION d/b/a THE ANGRY CRAB ("Plaintiff"), for its Complaint against Defendant SOCIETY INSURANCE INC. ("Defendant"), pleading hypothetically and in the alternative, alleges as follows:

### INTRODUCTION

1. Plaintiff is the owner and operator of a restaurant (The Angry Crab) at 5655 N Lincoln Avenue, Chicago, IL 60659.

2. Plaintiff has been forced by orders issued by the State of Illinois to cease its operations for several weeks, and then to severely reduce their operations for an indefinite period – all as part of the State's efforts to slow the spread of the COVID-19 pandemic (also referred to as "coronavirus"). The closures and operation reductions mandated by these Orders present an existential threat to Plaintiff's local business.

3. To protect its business from situations like these, which threaten its livelihood based on factors wholly outside of its control, Plaintiff obtained business interruption insurance from Defendant, SOCIETY INSURANCE, INC.

1

4. In breach of its insurance obligations that it voluntarily undertook in exchange for Plaintiff's premium payments, Defendant has denied Plaintiff's claims arising from the State-ordered interruption of its business. Plaintiff must now bring this action against Defendant for its failure to honor its obligations under its commercial business owner insurance policy issued to Plaintiff, which provides coverage for losses incurred due to a necessary suspension of its operations, including when its business is forced to close due to a government order.

5. On March 15, 2020, during the term of the Policy issued by Defendant to Plaintiff, Illinois Governor Pritzker issued an order first closing all restaurants, bars, and movie theaters to the public in an effort to address the ongoing COVID-19 pandemic. A few days later, on March 20, 2020, Governor Pritzker ordered all "non-essential businesses" to close. The March 15 and March 20 orders are hereinafter collectively referred to as the "Closure Orders."

6. As a result of the Closure Orders, Plaintiff has been forced to halt ordinary operations, resulting in substantial lost revenues.

7. Despite Defendant's express promise in its policy to cover Plaintiff's business interruption losses when the government forces them to close, Defendant has issued blanket denials to Plaintiff and other similarly situated insureds for any losses related to the Closure Orders, without first conducting any meaningful investigation, let alone a "reasonable coverage investigation based on all available information", by merely asserting that the coronavirus does not constitute physical loss.

8. In fact, defendant circulated a memorandum on March 16, 2020, acknowledging that states, such as Illinois, had "taken steps to limit operations of certain businesses," but prospectively concluding that Society Insurance's policies would likely not provide coverage for losses due to a "governmental imposed shutdown due to COVID-19." (Defendant Memorandum, attached as Ex. A).

9. To the extent Defendant Defendant's conclusion that the actual or alleged presence of COVID-19 does not result in property damage is contrary to the law in Illinois. Illinois courts have consistently held that the presence of a dangerous substance in property constitutes "physical loss or damage." *See, e.g., Bd. Of Educ. Of Twp. High Sch. Dist. No 211 v. Int'l Ins. Co.,* 720 N.E.2d 622, 625-26 (Ill. Ct. App. 1999), as modified on denial of reh'g (Dec. 3, 1999).

10. The presence of a substance like COVID-19 does in fact legally result in property damage. Illinois courts have consistently held that the presence of a dangerous substance in a property constitutes "physical loss or damage." *See, e.g., Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 720  N.E.2d 622, 625–26 (Ill. Ct. App. 1999), *as modified on denial of rehearing* (Dec. 3, 1999).

11. Moreover, unlike many commercial property policies available on the market, the policies sold by Defendant do not include an exclusion for loss caused by a virus. The definition of Covered Cause of Loss in the Policy says, "Direct Physical Loss *unless the loss is excluded* or limited under this form." Thus, Plaintiff reasonably expected that the insurance it purchased from Defendant included coverage for property damage and business interruption losses caused by viruses like COVID-19.

12. If Defendant wanted to exclude pandemic-related losses under the Plaintiff's policy – as many other insurers have done in other policies – it easily could have been attempted to do so on the front end with an express exclusion to its Covered Causes of Loss in the coverage form. Instead, Defendant waited until after it collected Plaintiff's premiums, and after a pandemic and the resulting Closure Orders caused catastrophic business losses to Plaintiff, to try to limit its exposure through an erroneous assertion that the presence of COVID-19 and the Closure Orders do not qualify as "physical loss or damage" and are therefore not covered under the policy.

13. The fact that the insurance industry has created specific exclusions for pandemic-related losses under similar commercial property policies undermines Defendant's assertion that the presence of a virus, like the coronavirus, does not cause "physical loss or damage" to property. Indeed, if a virus could never result in a "physical loss" to property, there would be no need for such an exclusion. Moreover, Defendant's assertion ignores the fact that their Policy promised to provide coverage for losses incurred due to government actions "taken in response to dangerous physical conditions," even if those dangerous physical conditions cause damage to property at locations other than those insured under the Policy.

14. Thus, Defendant's wholesale, cursory coverage denials are arbitrary and unreasonable, and inconsistent with the facts and plain language of the Policy it issued. These denials appear to be driven by Defendant's desire to preempt its own financial exposure to the economic fallout resulting from the COVID-19 crisis, rather than to initiate, as Defendant is obligated to do, a full and fair investigation of the claims and a careful review of the Policy they sold to Plaintiff in exchange for valuable premiums.

15. As a result of Defendant's wrongful denial of coverage, Plaintiff files this action for a declaratory judgment establishing that it is entitled to receive the benefit of the insurance coverage it purchased, for indemnification of the business losses they have sustained, for breach of contract, and for bad faith claims handling under 215 ILCS 5/155.

**PARTIES**

16. Plaintiff is an Illinois Corporation with its principal place of business in Chicago, Illinois, in the Northern District of Illinois. Plaintiff has a Businessowners Policy from Defendant, Policy No. BP19034373, which covers losses for occurrences at its restaurant.

17. Defendant Society Insurance is a mutual company engaged in the business of selling and providing property and casualty insurance to commercial entities such as Plaintiff, in

Illinois and elsewhere. Society Insurance is incorporated in the State of Wisconsin and maintains its principal place of business in Wisconsin.

## JURISDICTION & VENUE

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

19. This Court has personal jurisdiction over Society Insurance pursuant to the Illinois "long arm statute," 735 ILCS 5/2-209, because Society Insurance has submitted to jurisdiction in this state by: (a) transacting business in Illinois; (b) contracting to insure a person, property or risk located within Illinois at the time of contracting; and (c) making a contract substantially connected with Illinois. See 735 ILCS 5/2-209(1), (4), (7). In addition, Society Insurance exercises substantial, systematic, and continuous contacts with Illinois by doing business in Illinois, serving insureds in Illinois, seeking additional business in Illinois, and subjecting itself to the authority of the Illinois Department of Insurance.

20. This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to its respective rights and obligations under the Policy with respect to the loss of business arising from the civil authority event detailed below.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omission giving rise to Plaintiff's claims occurred within the Northern District of Illinois.

## FACTUAL ALLEGATIONS

22. Plaintiff incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 – 22 above.

A. **The Society Insurance Policy**

23. In exchange for substantial premiums, Defendant sold a commercial property insurance policy (the "Policy") promising to indemnify the Plaintiff for losses resulting from occurrences, including the necessary suspension of business operations at any insured location caused by a government order, during the relevant time period.

24. In relevant part, the Policy states "[w]e will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (See Policy, attached as Exhibit A, p. 55). The Policy defines Covered Property as Buildings described and Business Personal Property as described. (Id.) The Policy defines Covered Cause of Loss as "Direct Physical Loss unless the loss is excluded or limited under this coverage form." (Id. at 56)

25. The relevant provision of the Policy setting forth the scope of coverage for business interruption losses are contained within the Businessowners Special Property Coverage Form. (Id. at 55)

26. The Policy provides broad coverage for any direct physical losses caused by any cause unless expressly excluded.

27. The Policy does not exclude losses from viruses or pandemics. Thus, the Policy purchased by Plaintiff covers direct physical losses caused by viruses, such as COVID-19.

28. In addition to property damage losses, the Policy provides Additional Coverage to "pay for the actual loss of Business Income" sustained by Plaintiff "due to necessary suspension" of Plaintiff's operations during the period of business interruption caused by "direct physical loss of or damage to covered property" at the insured's premises.

29. With respect to business interruption losses, "suspension" means: (1) "the partial slowdown or complete cessation of your business activities;" or (2) "that a part or all of the

described premises is rendered untenantable if coverage for Business Income applies."

30. "Business Income" is defined in relevant part as "Net Income (Net Profit or Loss before income tax) that would have been earned or incurred if no physical loss or damage had occurred," plus "continuing necessary operating expenses incurred."

31. Defendant also provides Additional Coverage for "necessary Extra Expense" Plaintiff incurs during the period of interruption that they "would not have incurred if there had been no direct physical loss or damage to covered property at the describes premises."

32. "Extra Expense" is defined in relevant part as any expense incurred (1) "to avoid or minimize the suspension of business and to continue operations at the described premises;" (2) "[t]o minimize to suspension of business if [Plaintiff] cannot continue operations;" or (3) "to [r]epair or replace any property[.]"

33. The Additional Coverage under the Policy also includes "Civil Authority" coverage, pursuant to which Defendant promised to pay for the loss of income and necessary expenses sustained by Plaintiff "caused by action of civil authority that prohibits access" to Plaintiff's insured premises.

34. The "Civil Authority" coverage is triggered when a non-excluded cause results in "damage to property other than property" at the Plaintiff's premises and is intended to cover losses resulting from governmental actions "taken in response to dangerous physical conditions.'"

35. The Policy also provides Additional Coverage for "Contamination" coverage, pursuant to which the Defendant promised to pay for costs to clean and sanitize, actual loss of Business Income, and Extra Expense sustained due to contamination that results in an action by a public health or other government authority prohibiting access to the described premises or production of Plaintiff's product; a "contamination threat"; or "'Publicity' resulting from the discovery or

7

suspicion of contamination."

36. "Contamination" is defined by the Policy as "a defect, deficiency, inadequacy, or dangerous condition in [Plaintiff's] products, merchandise, or premises."

**B.** **Plaintiff's Losses Due to the Coronavirus Pandemic and Related Closure Orders**

37. On March 11, 2020, the World Health Organization declared that the emerging threat from the novel coronavirus—otherwise known as COVID-19—constituted a global pandemic.

38. Emerging research on the virus and reports from the CDC indicate that the COVID-19 strains physically infect and can survive on surfaces for up to 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous. Other research indicates that the virus may linger on surfaces for up to four weeks in low temperatures.

39. In response to the pandemic, and the spread of the coronavirus in Chicago and throughout Illinois, Illinois Governor Pritzker issued Executive Order 2020-07 on March 15, 2020 requiring that all bars, restaurants, and movie theaters close to the public beginning on March 15, 2020 and continuing through March 30, 2020.

40. The continuous presence of the coronavirus on or around Plaintiff' premises created a dangerous condition that rendered the premises unsafe and unfit for its intended use and therefore caused direct physical property damage or loss under the Policy.

41. Executive Order 2020-07 was issued in direct response to these dangerous physical conditions, and prohibited the public from accessing Plaintiff's business, thereby causing the necessary suspension of its operations and triggering the Civil Authority and Contamination coverage under the Policy. Executive Order 2020-07 specifically states, "the Illinois Department of Public Health recommends Illinois residents avoid group dining in public settings, such as in bars and restaurants, which usually involves prolonged close social contact contrary to recommended practice for social distancing," and that "frequently used surfaces in

public settings, including bars and restaurants, if not cleaned and disinfected frequently and properly, also pose a risk of exposure."

42. Governor Pritzker's March 20, 2020 Closure Order (Executive Order 2020-10) closing all "non-essential" businesses in Illinois, including all restaurants and movie theaters, likewise was made in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiff's premises.

43. Like the March 15, 2020 Closure Order, the March 20, 2020 Order prohibited the public from accessing Plaintiff's business, thereby causing the necessary suspension of its operations and triggering Civil Authority and Contamination coverage under the Policy.

44. As a result of the Closure Orders, the Plaintiff has suffered substantial Business Income losses and incurred Extra Expense. The covered losses incurred by Plaintiff and owed under the Policy is increasing every day and are expected to exceed a substantial sum.

45. Following the March 15, 2020 Closure Order, the Plaintiff submitted a claim to Defendant requesting coverage for its business interruption losses promised under the Policy. Defendant has denied Plaintiff's claim. (See Denial Letter, attached as Exhibit B).

## COUNT I: DECLARATORY JUDGMENT

46. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 – 45 above.

47. The Policy is an insurance contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of a pandemic and related government orders forcing them to close or reduce its business.

48. Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy.

49. Defendant has arbitrarily and without justification refused to reimburse Plaintiff for any losses incurred by Plaintiff in connection with the covered business losses related to the Closure Orders and the necessary interruption of its business stemming from the COVID- 19 pandemic.

50. An actual case or controversy exists regarding Plaintiff' rights and Defendant's obligations under the Policy to reimburse Plaintiff for the full amount of losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic.

51. Pursuant to 28 U.S.C. § 2201, Plaintiff seek a declaratory judgment from this Court declaring the following:

> (a) Plaintiff' losses incurred in connection with the Closure Orders and the and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy;
>
> (b) Defendant has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff' losses by issuing blanket coverage denials without conducting a claim investigation as required under Illinois law; and
>
> (c) Defendant is obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the four-week indemnity period and the necessary interruption of its business stemming from the COVID-19 pandemic.

### COUNT II: BREACH OF CONTRACT

52. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 – 51 above.

53. The Policy is an insurance contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the COVID-19 pandemic and related government orders forcing it to close its business. Plaintiff has complied with all applicable provisions of the

Policy, including payment of the premiums in exchange for coverage under the Policy, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

54. By denying coverage for any business losses incurred by Plaintiff in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policy.

55. As a result of Defendant's breaches of the Policy, Plaintiff has sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

### COUNT III: STATUTORY PENALTY FOR BAD FAITH DENIAL OF INSURANCE UNDER 215 ILCS 5/155

56. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1 - 55 above.

57. On March 16, 2020, Defendant's President & CEO sent a message to agency partners indicating that coverage was unlikely to apply to COVID-19 related claims. (See Partner Email, attached as Ex. C).

58. Defendant denied Plaintiff's claim upon receipt without conducting any investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law. See 215 ILCS 5/154.6.

59. Based on information and belief, Defendant denies claims as part of a plan to discourage claim notifications and to avoid any responsibility for its policyholders' staggering losses, in violation of Illinois law. Defendant's denial was vexatious and unreasonable.

60. Defendant's denials constitute "improper claims practices" under Illinois law— namely Defendant's (1) refusals to pay Plaintiff's claim without conducting reasonable investigations based on all available information, and (2) failure to provide reasonable and accurate

explanations of the bases in its denials. See 215 ILCS 5/154.6 (h), (n).

61. Therefore, pursuant to 215 ILCS 5/155, Plaintiff requests that, in addition to entering a judgment in favor of Plaintiff and against Defendant for the amount owed under the Policy at the time of judgment, the Court enter a judgment in favor of Plaintiff and against Defendant for an amount equal to the greater of: (1) 60% of the amount which the trier of fact finds that Plaintiff is entitled to recover under the Policy, exclusive of costs; and (2) $60,000. See 215 ILCS 5/155.

62. Plaintiff further requests that the Court enter a judgment in favor of Plaintiff and against Defendant in an amount equal to the attorneys' fees and costs incurred by Plaintiff for the prosecution of this coverage action against Defendant, which amount will be proved at or after trial, pursuant to 215 ILCS 5/155.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court:

1. Enter a declaratory judgment on Count I of the Complaint in favor of Plaintiff and against Defendant, declaring as follows:

   a) Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy;

   b) Defendant has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's losses by issuing a blanket coverage denial without conducting a claim investigation as required under Illinois.

   c) Defendant is obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the four-week indemnity period and the necessary interruption of its business stemming from the COVID-19 pandemic.

2. Enter a judgment on Count II of the Complaint in favor of Plaintiff and against Defendant and award damages for breach of contract in an amount to be proven at trial;

3. Enter a judgment on Count III of the Complaint in favor of Plaintiff and against Defendant in the amount equal to amount equal to the greater of (1) 60% of the amount which the trier of fact finds that Plaintiff is entitled to recover under the Policy, exclusive of costs; and (2) $60,000;

4. Enter a judgment in favor of Plaintiff and against Defendant in an amount equal to all attorneys' fees and related costs incurred for the prosecution of this coverage action against Defendant, pursuant to 215 ILCS 5/155, which amount to be established at the conclusion of this action;

5. Award to Plaintiff and against Defendant prejudgment interest, to be calculated according to law, to compensate Plaintiff for the loss of use of funds caused by Defendant's wrongful refusal to pay Plaintiff for the full amount in costs incurred in connection with its Closure Order Claim.

6. Award Plaintiff such other, further, and additional relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demand trial by jury on all issues so triable.

Dated: March 19, 2021				Respectfully Submitted,

							By:/s/ Brian LaCien
							Attorney for the Plaintiff

							Brian LaCien
							Andrew W. Mason
							**SMITH LACIEN LLP**
							70 West Madison Street, Suite 5770
							Chicago, IL 60602-4212
							Phone: (312) 509-8900
							blacien@smithlacien.com
							amason@smithlacien.com


							Matthew T. Dattilo
							**SIMPSON DATTILO, LLC**
							5559 S. Archer Avenue, Suite 3
							Chicago, IL 60638
							Phone: (312) 416-1953
							matt@simpsondattilo.com